UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARLES RICHARD CORS,                    :

                Plaintiff,          :

  -against-                                       : **REPORT AND RECOMMENDATION**

UNITED STATES OF AMERICA,                :       12 Civ. 2265 (LAK)(KNF)

                Defendant.         :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE

      Charles Richard Cors ("Cors"),[1] proceeding pro se and in forma pauperis, brings this action against defendant United States of America, alleging that: (1) he was charged the "wrong amount [of] interest" after he failed to repay timely a repatriation loan extended to him by the defendant for travel expenses associated with his return to the United States from the United Kingdom; (2) the denial of his application for a passport following his return to the United States, because of his failure to repay the loan extended to him by the defendant, along with accumulated interest and fees, was improper; and (3) he "may have been ejected from England illegally," notwithstanding the expiration of his 90-day travel visa, and due to an error on the part of a United States Consulate official, because he spent all but five days of his five-month stay in the United Kingdom in a hospital. Before the Court is the defendant's motion for summary judgment, made pursuant to Rule 56 of the Federal Rules of Civil Procedure. Cors opposes the motion.

---

[1] The plaintiff is also known by the name Charles Richard Coors.

**BACKGROUND**

Cors traveled to the United Kingdom ("U.K.") in May 2010, having been issued a 90-day travel visa. About five days after he arrived in the U.K., on or about May 15, 2010, Cors was taken to the Maudsley Hospital in London. He remained at the hospital, as an inpatient, for five months.

On or about October 13, 2010, Cors received an emergency repatriation loan (the "Loan") from the United States Department of State ("State Department"), in the amount of $791.70, through the United States Embassy in London. In order to receive the Loan, Cors executed a form titled "Emergency Loan Application and Evacuation Document," provided to him by the State Department, which contains a Promissory Note. On the Loan application form, Cors indicated that he lived at 287 Massachusetts Avenue, Apt[.] 7, Arlington, Massachusetts, which he identified as a "Friend's Residence."

Through the Loan application form's Promissory Note, Cors acknowledged that he is "a citizen of the United States" and "promise[d] to repay [the Loan] within 90 days after the signing of this note, and at an interest rate established in accordance with Federal Law." Cors also acknowledged that he understood that his "name [would] be included in the passport lookout system until the debt [was] repaid." Pursuant to the repayment agreement portion of the Loan application form, Cors affirmed that he understood that: (1) his obligation to repay the Loan would not be discharged until payment in full had cleared through an account of the Treasury of the United States; and (2) the loan would be subject to interest, penalties, and other charges for late payment. In addition, he promised to repay the principal amount of the loan, $791.70, within 90 days. Cors also affirmed his understanding that, if he failed to repay the Loan within 90 days: the Loan would be in default; the account would be turned over to the Treasury

Department; and he would be liable for any costs for collection.  Thereafter, the State Department purchased an airline ticket on Cors' behalf, enabling him to travel from London to Boston, on October 15, 2010.[2]

On October 21, 2010, the State Department wrote to Cors at the address indicated on the Loan application form, informing him, inter alia, of the address to which payments on the Loan were to be sent.  On December 27, 2010, the State Department wrote to Cors again, advising him that his Loan payment was past due, that interest had accrued, and that if he submitted payment within 30 days, he could avoid having to pay additional penalties.  On January 26, 2011, another letter was sent to Cors, advising him that the total amount due, with interest and penalties, was $843.04.  On February 24, 2011, Cors was sent a "Notice of Intent to Offset," which informed him that if he did not repay his debt within 60 days, the Loan would be referred to the Department of Treasury for debt collection or offset against federal payments due to him, such as tax refunds.

On or about March 14, 2012, Cors applied for a new passport at the New York Passport Agency, located at 376 Hudson Street, New York, New York.  In a letter dated March 16, 2012, the State Department advised Cors that he was required to repay the Loan within 90 days, or else his passport application would be denied; by this date, the amount of the Loan, including interest and penalties, was $1,166.68.  Cors failed to respond to the letters sent to him by the State Department, and the Loan remained unpaid.

As set forth in the Declaration of Julie Slaughter ("Slaughter"), a manager in the Cross-Servicing Policy Branch of the Debt Management Services ("DMS")[3], Federal agencies owed

---

[2] Cors, in his amended complaint, states that he traveled from London to New York.  However, the documents supplied by the defendant, including the receipt for the airfare, indicate that the flight would arrive in Boston.

[3] DMS is a component of the Bureau of the Fiscal Service, U.S. Department of the Treasury.

debts ("creditor agencies") transfer the delinquent debts to DMS for collection. At the time of transfer, creditor agencies are "required to certify to DMS that the debts they transfer are delinquent, valid, and legally enforceable in the amount stated, and that any required due process has been given in accordance with 31 C.F.R. § 285.12 and any laws specific to the debt." DMS then performs "all appropriate and required actions to collect delinquent debts" referred to it by the creditor agencies. DMS charges the creditor agencies fees to cover the cost of collection. Such fees are based on the age of the debt at the time of referral to DMS: 28% for debts that are less than two years delinquent, and 30% for debts that are over two years delinquent. DMS then computes the fee on the entire debt balance, inclusive of principal, interest, penalties, and administrative costs the agency incurred when attempting collection prior to referral to DMS.

  According to Slaughter, based on her review of the records related to Cors' debt, the State Department referred the debt to DMS on June 16, 2011. At the time of the referral of the debt to the Department of Treasury, the debt balance was $862.28, comprised of $791.70 in principal, $3.34 in interest, $50.00 in administrative charges, and $17.24 in penalties. On the day the debt was referred to DMS, DMS applied additional interest of $1.08 and penalties of $6.51, increasing the debt to $869.87, to which DMS added a 28% collection fee of $243.56. The resulting debt amounted to $1,113.43. As of March 16, 2012, the debt balance was $1,166.68, comprised of $791.70 in principal, $10.36 in interest, $50.00 in administrative charges, $59.41 in penalties, and $255.21 in DMS fees. As of April 2, 2013, the debt balance was $1,240.92, comprised of $791.70 in principal, $18.65 in interest, $50.00 in administrative charges, $109.12 in penalties, and $271.45 in DMS fees. According to Slaughter, as of April 25, 2013, no collections had posted to Cors' account.

4

## PROCEDURAL HISTORY

Cors commenced this action on March 27, 2012. Thereafter, on April 19, 2012, Cors filed an amended complaint, alleging that he was charged the "wrong amount [of] interest" on the Loan in that "interest on the loan is 50% not the normal government 10%"; he may have been "ejected from England illegally," notwithstanding the expiration of his 90-day travel visa, because he spent all but five days of his five-month stay in the U.K. in a hospital; and the denial of his passport application was improper. On April 19, 2013, Cors filed a "motion of suspension" in relation to his "claim for illegal deportation [and] interest on [the] ticket provided by [the] American Consulate." In his motion, Cors asserted that he had learned from an official at the Brazilian Consulate that, "when detained in [a] hospital beyond the three month[] entrance visa – you apply at [the] local police bureau for an extension – it is an international statute." Cors alleged further, by way of his motion, that the "situation in England with the American Consulate [and the] Maudsley Hospital five months stay was [a] large error of new employees, lack of knowledge, etc." The defendant filed its motion for summary judgment on April 29, 2013. Cors' affirmation in opposition to the motion was filed on May 31, 2013; no reply was filed by the defendant.

## THE PARTIES' CONTENTIONS

The defendant contends it is entitled to summary judgment because no genuine issue of material fact exists concerning whether Cors owes the principal amount of the Loan and all the interest, fees and penalties applied to it. With respect to the interest, fees and penalties, the defendant asserts that federal agencies are required to apply such charges on all receivables pursuant to 31 U.S.C. § 3717(a), (e), and that these agencies are required to transfer delinquent debts, such as Cors' debt to the Department of Treasury after 180 days, which may then impose

a fee on the debtor to cover the costs of collection, pursuant to 31 U.S.C. § 3711(g)(1), (6). Furthermore, the defendant contends that it denied Cors' passport application properly, pursuant to 22 C.F.R. § 51.60, owing to his failure to repay the Loan. Additionally, the defendant maintains that Cors' "motion of suspension" should be construed as a request for leave to amend his amended complaint, and that leave should not be granted because the proposed amendment is futile, comes after undue delay, and would prejudice the defendant. The defendant also asserts that Cors' motion can be understood as an application for the defendant to be equitably estopped from collecting on the loan because of the erroneous statements that were made to Cors regarding whether he could stay in the U.K. The defendant contends that such an application has no merit in the circumstances.

In support of its motion, the defendant has submitted: (a) the Declaration of Arastu K. Chaudhury ("Chaudhury"), an assistant United States attorney; (b) the Slaughter Declaration; (c) the defendant's statement of undisputed facts; and (d) the defendant's memorandum of law in support of its motion for summary judgment and in opposition to Cors' "motion for suspension of deportation."

In his affirmation in opposition to the defendant's motion, Cors reasserts the allegations set forth in his amended complaint. In addition, Cors contends that an inexperienced clerk with the United States Consulate in the U.K. advised him, incorrectly, that he had overstayed his travel visa and "had to leave England." Cors maintains that, according to an official at the Brazilian Consulate, "you go to the police headquarters and they extend your visa the time of overage (sic) of hospital stay." According to Cors, such an extension of the expiration date of an entrance visa was permitted by an "international statute," however, the United States Consulate official who advised him that he was required to return to the United States was not aware of this

"statute," and misinformed him concerning his obligation to apply for a repatriation loan. Therefore, Cors contends, he should not have to repay the Loan because "the American Consulate was at fault."

**DISCUSSION**

*Motion for Summary Judgment*

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The Local Civil Rules of this court provide that, on a motion for summary judgment, the movant must submit a statement "of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." Local Civil Rule 56.1(a). Each statement, pursuant to Local Civil Rule 56.1, "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In determining whether a genuine issue as to any material fact exists, a "district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). Additionally, "the court is not entitled to weigh the evidence" and "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Id.

## I. Repayment of Loan

### 1. Cors' Obligation to Pay Principal

The submissions made in connection with the defendant's motion establish that no genuine issue of material fact exists concerning whether Cors has an obligation to repay the principal amount of the loan he received from the defendant. It is not disputed that Cors received a repatriation loan from the State Department for the purpose of returning to the United States from the U.K., following the expiration of his travel visa. By executing the Loan application form, moreover, Cors acknowledged that he was obligated to repay the loan within 90 days. Additionally, Cors received the benefit of the Loan, in the form of an airplane ticket from London to the United States, and money for expenses. Therefore, Cors is obligated to repay the principal loan amount.

### 2. The Defendant's Authority to Charge Interest and Fees

"The head of [a Federal] agency shall charge a minimum annual rate of interest on an outstanding debt on a United States Government claim owed by a person." 31 U.S.C. § 3717(a)(1). In addition:

> [t]he head of [a Federal] agency shall assess on a claim owed by a person (1) a charge to cover the cost of processing and handling a delinquent claim; and (2) a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due.

31 U.S.C. § 3717(e)(1–2).

Federal agencies are also required to transfer debts that are delinquent for 180 days or more to the Treasury Department for collection. See 31 U.S.C. § 3711(g)(1). The Treasury Department then "may charge a fee sufficient to cover the full cost of implementing this subsection," i.e., to cover the cost of collection. 31 U.S.C. § 3711(g)(6). Furthermore, in connection with the repatriation loan program, the Secretary of State is authorized to: charge interest on all loans; assess charges, in addition to interest, to cover the costs of processing and handling delinquent claims; and assess a penalty charge of 6 per centum per year for failure to pay any portion of a debt more than 90 days past due. See 22 U.S.C. § 2671(d)(8–10).

No genuine issue of material fact exists concerning Cors' obligation to pay the interest, fees and penalties that were added to the principal amount of the Loan, pursuant to the statutory provisions set forth above. The additional charges added to the principal amount of the Loan were legally applied, as Federal agencies are required to charge interest, penalties and fees on all receivables. Cors' claim that he was charged the "wrong amount of interest," appears to reflect a misunderstanding of the way in which the costs associated with repayment and collection of the Loan were assessed. In the circumstance of the instant case, granting this branch of the defendant's summary judgment motion is warranted.

## II. *Denial of Passport*

Cors contends that the denial of his passport application, based on his failure to repay the Loan, was improper. However, Cors fails to demonstrate the existence of a disputed issue of material fact with respect to the propriety of the defendant's actions regarding his attempt to

obtain a new passport. Pursuant to State Department regulations:

> [t]he [State] Department may not issue a passport, except a passport for direct return to the United States, in any case in which the Department determines or is informed by competent authority that . . . [t]he applicant is in default on a loan received from the United States under 22 U.S.C. § 2671(b)(2)(B) for the repatriation of the applicant.

22 C.F.R. § 51.60(a)(1).

Furthermore, the Loan application form executed by Cors states explicitly that, in the event of a failure to repay the Loan, Cors' "name [would] be placed in the passport lookout system." Hence, the terms of both the Code of Federal Regulations and the Loan agreement signed by Cors establish that the denial of Cors' passport application was warranted in the circumstances. Therefore, granting this branch of the defendant's summary judgment motion is appropriate.

### III.  *Removal from the United Kingdom*

Cors alleges that he was "ejected from England illegally," notwithstanding the expiration of his travel visa, because he spent all but five days of his five-month stay in the U.K. in a hospital. As noted above, Cors claims that his long hospital stay should have been the basis for an extension of his visa expiration date; however, Cors was not informed of this while in the U.K., or of the purported "international statute," which would have allowed the exemption from his travel limitations.

Cors fails to identify the "international statute" to which he refers, or any other legal authority upon which the Court may rely in determining whether his claim has merit. Nor is the Court aware of any legal basis for Cors' claim that he was entitled to an extension of his visa's expiration date. Therefore, no disputed issue of material fact exists concerning whether Cors' removal from the U.K., under the Loan procedure, was improper. Accordingly, summary

judgment for the defendant with respect to this claim is also appropriate.

## IV.  *Reliance on Information from United States Officials*

Cors maintains that the United States Consulate official who advised him that he was required to leave the U.K. misinformed him concerning his rights and obligations, as a citizen traveling on a visa, and, hence, that he should not have been required to incur the debt arising from the repatriation loan.  The defendant contends that Cors' claim may be interpreted as a request that it be equitably estopped from collecting on the Loan because of the purportedly erroneous statements made to Cors by a United States Consulate official.  However, the defendant asserts that the plaintiff's reliance on principles of estoppel is misplaced in this case.

"[E]stoppel [is applied] to the Government only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct."  City of New York v. Shalala, 34 F.3d 1161, 1168 (2d Cir. 1994) (citations omitted).  Where a government employee lacks knowledge and disseminates incorrect information on the basis of his ignorance, as Cors alleges here, "no affirmative misconduct" can be attributed to the employee.  Long Island Radio Co. v. NLRB, 841 F.2d 474, 478 (2d Cir. 1988).  Moreover, persons dealing with the government are charged with knowledge of and are bound by statutes and lawfully promulgated rules and regulations, notwithstanding their reliance to their pecuniary detriment, on incorrect information received from a government employee.  See Heckler v. Community Health Servs., Inc., 467 U.S. 51, 63, 104 S. Ct. 2218, 2225 (1984); Flamm v. Ribicoff, 203 F. Supp. 507, 510 (S.D.N.Y. 1961).

Cors has failed to demonstrate that the defendant made a misrepresentation upon which he relied reasonably and detrimentally or that a government employee, by advising Cors

11

"incorrectly" that he had to leave the U.K., due to the employee's ignorance of an unidentified "international statute," engaged in affirmative misconduct. As a consequence, even if Cors were making an argument against the defendant's collecting on the debt owed, based on estoppel, the argument would be without merit.

As noted earlier, the defendant contends that Cors' "motion of suspension" should be interpreted as a motion for leave to amend his amended complaint. Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Leave to amend a pleading "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

The Court has construed Cors' motion liberally, as a motion to amend his pleading, see Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006), as the defendant has suggested. Having done so, it appears to the Court that, in this case, it would be futile to allow Cors to amend his pleading. This is so because the proposed new claim for damages, predicated upon misinformation he allegedly received from a United States Consulate official, as described above, provides no basis upon which he either could recover damages or avoid the debt obligation he owes the defendant.

## RECOMMENDATION

For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and that the plaintiff's request to amend his pleading be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review***. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58–59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

Dated: New York, New York
      December 23, 2013

Copy mailed to:

Charles Richard Cors

Respectfully submitted,

*/s/ Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE